## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DONNA HINCHER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv00032 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Donna Hincher, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hincher protectively filed her applications for DIB and SSI on February 2, 2001,[1] alleging disability as of January 23, 2001, due to an inner ear problem with dizziness, asthma, emphysema, hypertension, depression, anxiety, panic attacks, swelling in her ankles and legs, back pain, fatigue and pain in her hands. (Record, ("R."), at 19, 247-50, 253, 266, 487-90, 530.) The claims were denied initially and on reconsideration. (R. at 226-28, 229, 231-32.) Hincher then requested a hearing before an administrative law judge, ("ALJ"). (R. at 233.) The ALJ remanded Hincher's claims to the state agency. (R. at 238-39.) Hincher's claims were denied again, (R. at 241-42), and Hincher again requested a hearing before an ALJ. (R. at 243.) The hearing was held on December 5, 2002, at which Hincher was represented by counsel. (R. at 528-41.)

The ALJ issued a decision dated January 14, 2003, denying Hincher's claims. (R. at 19-30.) The ALJ found that Hincher met the nondisability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 28.) The ALJ also found that Hincher had not engaged in substantial gainful

---

[1] Hincher has filed at least one prior application for DIB and SSI. (R. at 60-62, 196-200.) By decision dated January 22, 2001, an administrative law judge found that Hincher was not disabled under the Act. (R. at 211-17.)

activity since her alleged disability onset date. (R. at 28.) The ALJ determined that the medical evidence established that Hincher suffered from severe impairments, including asthma, an anxiety disorder and a borderline to average intelligence, but he found that Hincher did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21, 28.) The ALJ found that Hincher had the residual functional capacity to perform unskilled, light work not requiring exposure to respiratory irritants or temperature extremes and which could be performed with mild restrictions of activities of daily living, mild to moderate difficulties in maintaining concentration and mild difficulties in maintaining social interaction. (R. at 26, 29.) The ALJ found that Hincher was unable to perform her past relevant work. (R. at 29.) Based on Hincher's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Hincher could perform, including jobs as a food preparation worker, a waiter, a counter clerk, an inventory clerk, packer, a mail clerk, an information clerk and a sorter. (R. at 29.) Thus, the ALJ found that Hincher was not under a disability as defined under the Act and was not eligible for benefits. (R. at 29.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010). This decision was appealed to the Appeals Council, and the Appeals Council denied the request for review. (R. at 9-11, 15.) Hincher then appealed the Commissioner's decision denying benefits to this court.

Hincher also filed subsequent applications for DIB and SSI on May 21, 2003. (R. at 663-66.) These claims were denied initially and on reconsideration. (R. at 613-17, 618, 619-21.) Hincher then requested a hearing before an ALJ. (R. at

622.) Hearings were held on July 13, 2004, and February 2, 2005, at which Hincher was represented by counsel. (R. at 554, 916-50.) By decision dated February 25, 2005, the ALJ denied Hincher's claims. (R. at 571-83.) Hincher sought review of these claims by the Appeals Council.

Prior to a decision from the Appeals Council on Hincher's 2003 applications, this court remanded Hincher's 2001 claims to the Commissioner for further development of the issue of whether the use of a nebulizer at work would impact the jobs that Hincher could perform. (R. at 637-54.) On remand, the Appeals Council consolidated Hincher's 2001 and 2003 claims and remanded them for additional hearing before and ALJ. (R. at 633-34.) An additional hearing before an ALJ was held on December 8, 2005, at which Hincher was represented by counsel. (R. at 951-970.)

By decision dated March 30, 2006, the ALJ again denied Hincher's claims. (R. at 554-66.) The ALJ found that Hincher met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2004. (R. at 565.) The ALJ also found that Hincher had not engaged in substantial gainful activity since her alleged disability onset date. (R. at 565.) The ALJ determined that the medical evidence established that Hincher suffered from severe impairments, including asthma, an anxiety disorder and low average intellectual functioning, but he found that Hincher did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 561, 565.) The ALJ found that Hincher had the residual

functional capacity to perform light work[2] not requiring exposure to dust or other respiratory irritants or temperature extremes, which allowed the use of a nebulizer once over her lunch break and which could be performed with mild restrictions of activities of daily living, mild to moderate difficulties in maintaining concentration and mild to moderate difficulties in maintaining social interaction. (R. at 561.) The ALJ found that Hincher was unable to perform her past relevant work. (R. at 563, 565.) Based on Hincher's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Hincher could perform, including jobs as an interviewer, a library clerk, a factory messenger, a miscellaneous food preparer, a salad bar worker, a production machine tender, an assembler, a hand packer and an nonconstruction laborer. (R. at 564, 566.) Thus, the ALJ found that Hincher was not under a disability as defined under the Act and was not eligible for benefits. (R. at 566.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

After the ALJ issued his decision, Hincher pursued her administrative appeals, (R. at 549), but the Appeals Council denied her request for review. (R. at 542-44.) Hincher then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Hincher's motion for summary judgment filed December 10, 2010, and the Commissioner's motion for summary judgment filed January 10, 2011.

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

## II. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Hincher argues that the ALJ's finding that she was not disabled is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 12-24.) In particular, Hincher argues the ALJ erred by rejecting her treating physician's opinions. (Plaintiff's Brief at 12-14.) Hincher also argues that the ALJ's finding with regard to her residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief at 14-24.)

This court previously has held that substantial evidence exists in this record to support the ALJ's weighing of the medical evidence and the ALJ's finding as to Hincher's residual functional capacity. (R. at 640-48.) The only new medical evidence provided to the ALJ on remand consists of records showing that Hincher continued with psychological and psychiatric treatment with Frontier Health. (R. at 895-914.) The ALJ determined that Hincher suffered from severe mental impairments, including an anxiety disorder and low average intellectual functioning which resulted in mild restrictions of activities of daily living, mild to moderate difficulties in maintaining concentration and mild to moderate difficulties in maintaining social interaction. (R. at 561, 565.) The new evidence from Frontier Health simply confirms that Hincher's psychological impairments remained stable from January to October 2005 with counseling and medication. (R. at 895-914.) In fact, many of these reports state that Hincher was only "mildly depressed" or "mildly anxious." (R. at 895, 897, 904, 909, 913, 914.) The only exception to this came on July 8, 2005, when Hincher's counselor stated that she was "moderately depressed." (R. at 911.) Nonetheless, the counselor stated that Hincher's condition on this date was "stable." (R. at 911.) Therefore, I find that substantial evidence

continues to support the ALJ's findings as to the weighing of the medical evidence and as to Hincher's residual functional capacity.

This court previously ordered remand of this case to require the Commissioner to consider what, if any, impact the use of a nebulizer during work hours would have on Hincher's ability to perform other jobs that existed in significant numbers in the national economy. (R. at 650-53.) While Hincher testified that she used her nebulizer four to five times a day, (R. at 954), the medical evidence does not indicate the necessity of that frequency of use. On May 10, 2001, Hincher's treating pulmonologist, Dr. Joseph F. Smiddy, M.D., stated that Hincher used her nebulizer every four hours. (R. at 724.) On October 4, 2002, Hincher told her treating psychiatrist at Wise County Behavioral Health Center that she used her nebulizer every four hours. (R. at 463.) On December 17, 2003, Dr. S. K. Paranthaman, M.D., noted that Hincher used her nebulizer three times daily. (R. at 734.) This evidence supports the ALJ finding that Hincher would be required to use her nebulizer once a day at work during her lunch break.

The record also shows that, on remand, the ALJ elicited vocational expert testimony with regard to what, if any, impact the use of a nebulizer during work hours would have on Hincher's ability to perform other jobs that existed in significant numbers in the national economy. Robert Spangler, a vocational expert, testified at Hincher's December 8, 2005, hearing. (R. at 963-68.) Spangler was asked to assume an individual who could perform light work that did not require exposure to dust or other respiratory irritants or temperature extremes and who was required to use a nebulizer during her lunch break. (R. at 964.) Spangler stated that

such an individual could perform work as a library clerk, a messenger, a miscellaneous food prep worker, a production machine tender, an assembler, a hand-packer and a nonconstruction laborer. (R. at 964-65.) Spangler was asked to assume that this individual also had mild to moderate psychological restrictions regarding her ability to perform work-related functions. (R. at 967.) Spangler stated that such an individual could perform the jobs previously identified. (R. at 967.) This evidence supports the ALJ's finding that other work existed that Hincher could perform.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's weighing of the medical evidence;

2. Substantial evidence exists to support the ALJ's finding regarding Hincher's residual functional capacity; and

3. Substantial evidence exists to support the ALJ's finding that Hincher was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hincher's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     February 10, 2011.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE